# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANNY DAVID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 3:19-cv-205 |
| ) | Judge Stephanie L. Haines |
| THE PENNSYLVANIA STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff commenced this action by filing a complaint in the Cambria County Court of Common Pleas. *See* (ECF 1, at Exhibit "B", hereinafter "Complaint"). As the Complaint's sole allegation against Defendant is under the Rehabilitation Act, 29 U.S.C. §701 *et seq.* ("RA"), Defendant then removed the action on December 3, 2019, pursuant to 28 U.S.C. § 1331 (ECF 1), and then filed a Motion to Dismiss for Failure to State a Claim (ECF 3) and Brief in Support thereof (ECF 4). Plaintiff filed a Brief in Opposition to Defendant's Motion (ECF 6). This Court granted Defendant's Motion for Leave to File a Reply Brief (ECF 8), and Defendant then filed a Reply Brief (ECF 10). This Court also granted Plaintiff's Motion for Leave to File a Sur-Reply (ECF 11), and Plaintiff then filed a Sur-Reply (ECF 13). The matter is now ripe for disposition.

### I. Factual and Procedural History

In his Complaint, Plaintiff pleads the Defendant discriminated against him on the basis of his perceived disability in violation of Section 504 of the RA when Defendant revoked his conditional offer of employment because of his visual color deficiency. *See* Complaint at ¶1. Plaintiff, a resident of Uniontown, Pennsylvania, has been working as a law enforcement officer in the Commonwealth of Pennsylvania for over twenty (20) years. *Id.* at ¶¶ 3-5. Plaintiff alleges

he suffers from color vision deficiency which affects his ability to differentiate the colors red and green under some circumstances (hereafter, "color-blindness"). *Id.* at ¶8. In 2016, Plaintiff became employed at Penn State's Fayette campus as a Public Safety Officer. *Id.* at ¶ 13. Plaintiff was previously certified by the Municipal Police Officers' Education and Training Commission ("MPOETC") but his certification became inactive in 2008. *Id.* at ¶12. He took and passed the test to become recertified in 2017. *Id.*

In or about October of 2017, Plaintiff applied for the position of campus police officer for The Pennsylvania State University (hereinafter "PSU Police Officer"). *Id.* at ¶ 14. On June 22, 2018, Defendant provided Plaintiff with a conditional offer of employment. *Id.* at ¶16. Pursuant to Defendant's conditional offer of employment, Plaintiff was required to undergo a medical examination to ensure that all medical requirements necessary for the PSU Police Officer position were met. *Id.* at ¶17- 18. Plaintiff submitted to a physical examination by a physician chosen by Defendant. *Id.* at ¶18. This physical examination ultimately revealed Plaintiff's color vision deficiency. *Id.* at ¶20.

Defendant then withdrew its conditional offer of employment in July of 2018. *Id.* at ¶ 21. In his Complaint, Plaintiff pleads that Defendant's decision to withdraw Plaintiff's conditional offer of employment was not "job related and consistent with business necessity." *Id.* at ¶ 25. Plaintiff asserts that Defendant had no basis to believe that Plaintiff's color vision deficiency would impair his ability to perform the essential job functions of a PSU Police Officer, that Defendant has no basis to believe that Plaintiff's color vision deficiency would render him a direct threat, and that Defendant never conducted an individualized assessment of Plaintiff's present ability to safely perform the essential functions of a PSU Police Officer. *Id.* at ¶¶ 26-28.

Plaintiff pleads in the Complaint that color vision deficiency occurs in various degrees

2

ranging from mild to severe, and that Plaintiff's deficiency is mild. *Id.* at ¶18. He pleads further that the duties and responsibilities of a PSU Police Officer are substantially similar to the duties and responsibilities of his current occupation as a PSU Public Safety Officer, except that a Public Safety Officer lacks arrest powers. *Id.* at ¶ 15. Plaintiff pleads that his color vision deficiency has never affected his ability to perform any of his duties as a police officer during his 20-year career in law enforcement. *Id.* at ¶ 11. On August 17, 2019, Plaintiff provided Penn State with a letter from his own ophthalmologist stating that Plaintiff's "red/green color deficit, in [his] medical opinion, [would] not affect [Plaintiff's] ability to perform his duties at [sic] a Pennsylvania State Trooper or Municipal Police offer in Pennsylvania." *Id.* at ¶ 22. Defendant, however, did not subsequently reinstate Plaintiff's employment offer, nor did Defendant submit Plaintiff's application to MPOETC for further approval or certification. *Id.* at ¶¶ 23-24.

In its Motion to Dismiss, Defendant states that Plaintiff's offer of employment was specifically conditioned upon Plaintiff's ability to satisfy all medical requirements necessary for the performance of the PSU Police Officer position. (ECF 3 at ¶6). Defendant represents that given the duties of PSU Police Officers, and the similarities of those duties to municipal police officers, Defendant requires that its campus police officers be certified by the MPOETC. *Id.* at ¶7. Defendant's Motion refers to the following statute relating to MPOETC certification:

> To receive a MPOETC certification, in addition to several other requirements, applicants must have visual acuity of at least 20/70, uncorrected in the stronger eye, correctable to at least 20/20; and at least 20/200, uncorrected in the weaker eye, correctable to at least 20/40. In addition, the applicant shall have normal depth and color perception and be free of any other significant visual abnormality.

37 Pa. Code § 203.11.

As Plaintiff was unable to satisfy the medical requirements necessary for a MPOETC certification, and consequently, for the PSU Police Officer position, Defendant withdrew

3

Plaintiff's conditional offer of employment. *Id.* at ¶12. Defendant asserts that Plaintiff has failed to state a claim under the RA because Plaintiff is not an "individual with a disability," nor is he "otherwise qualified" for the position of PSU Police Officer. *Id.* at ¶19. Defendant contends that Plaintiff's color-blindness would prevent Plaintiff from performing certain essential functions of the job of PSU Police Officer and would specifically impede Plaintiff's ability to carry out the duties required of campus police officers found at 71 P.S. § 646.1.

## II. Standard of Review

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rather, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *Id.*; see also *Twombly*, 550 U.S. at 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; see also *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the

4

elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. At the final step, the court is to assume all well-pled allegations to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from them in favor of plaintiff, and ask whether they "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. *Id.* at 21-22.

### III. Legal Analysis

The elements of claims under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA") and the RA are essentially identical, although an RA claim includes the additional requirement that the program or activity from which the plaintiff is excluded receives federal financial assistance. *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995).("The ADA and the Rehabilitation Act have the same standard of liability and are to be interpreted consistently.") *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012). To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Correspondingly, in order to state a claim under the RA, a plaintiff must establish that (1) he is an "individual with a disability" under the Act, (2) he is "otherwise qualified" for the position sought, 3) he was excluded from the position "solely by reason of his handicap," and 4) the program or activity in question receives federal financial assistance. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995)(citing to *Strathie v. Department of Transp.*, 716 F.2d 227 (3d Cir.

5

1983) and *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991)).

Plaintiff does not plead that his color-blindness affects his work or constitutes a major life impairment, but rather argues that he has sufficiently pleaded that Defendant has regarded him as having an actual or perceived physical or mental impairment. Plaintiff is "regarded as" having a disability if he can establish that he has been subjected to discrimination because of "an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A)[1]. Defendant does not dispute that it is aware of Plaintiff's color-blindness and that his color-blindness is the sole reason that it withdrew the conditional job offer for the campus police position. However, it contends that Plaintiff's color-blindness[2] renders him not "otherwise qualified" for the position because Defendant requires that its campus police officers have normal color vision in order to carry out the essential functions of that position, which are enumerated at 71 P.S. § 646.1. Defendant contends that Plaintiff has failed to state a claim because his color-blindness prevents him from being qualified to perform the duties set forth at 71 P.S. § 646.1.

The ADA provides that an employer may assert a defense to a charge of discrimination by showing that a contested qualification standard is "consistent with business necessity" and/or that

---

[1] Plaintiff correctly notes that this distinction is a by-product of the 2008 passage of the ADA Amendments Act ("ADAAA"): the Supreme Court originally interpreted the ADA to require a plaintiff in a "regarded as" case to establish that his impairment either limited or was perceived to limit a major life activity, *see Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), but this interpretation was annulled by the ADAAA, *see* § 2(b)(3).

[2] Defendant's Brief in Support of its Motion to Dismiss emphasizes that Plaintiff is not "otherwise qualified" because his color-blindness will prevent him from receiving re-certification from the MPOETC. Defendant's Reply Brief explains that Plaintiff is not "otherwise qualified" because of Defendant's requirement for normal color perception based on the job duties of a campus police officer. Regardless of the slight distinction between the two reasons, both appear to be requirements created and imposed by Defendant.

6

it prevents an individual from posing "a direct threat to the health or safety" of others in the workplace. 42 U.S.C. § 12113(b)-(c). Defendant has explained in its briefing that its adoption of the requirement of normal color perception is consistent with the business necessities of the campus police officer position and that requiring normal color perception is consistent with ensuring the safety of others against a direct threat. Defendant sets forth in its briefs several scenarios where normal color perception would be critical to carrying out the duties of a campus police officer. Accordingly, Defendant states that, as Plaintiff is color-blind, he is not "otherwise qualified" to serve as campus police officers.

Defendant primarily relies on the *Hoppes v. Pennsylvania, Fish & Boat Comm'n*, 32 F. Supp. 2d 770 (M.D. Pa. 1998), *Coleman v. Pa. State Police*, 2013 U.S. Dist. LEXIS 99609 (W.D. Pa., July 17, 2013), and *Gibbs v. City of Pittsburgh*, 2019 U.S. Dist. LEXIS 74698 (W.D. Pa., May 3, 2019) cases in support if its legal argument to dismiss Plaintiff's claim. In all three of those cases, the court found in favor of the defendant employer. However, both *Hoppes* and *Coleman* were decided at the summary judgment stage, and those opinions reflect that the *Hoppes* and *Coleman* courts relied on the facts of record to reach their determinations as to the validity of those defendants' job qualification requirements.

The court in *Gibbs* did partially grant defendant police force's motion to dismiss and found that the plaintiff police officer candidate failed to state a claim. Defendant relies on the *Gibbs* decision to contend that Plaintiff's Complaint should similarly be dismissed in this case under Rule 12(b)(6). In *Gibbs*, the plaintiff police officer candidate received a job offer from the City of Pittsburgh police but then did not pass the required psychological exam because of an ADHD diagnosis. *Id.* at 3. His job offer was then revoked. The court concluded that plaintiff could not succeed on his "regarded as" claim because he had not shown he was "otherwise qualified" for the

position as mandated under Pennsylvania law ("the City, by law, could NOT hire Gibbs (even if he could perform the job) because he did not pass the psychological exam. 37 Pa. Code § 203.11(a)(7)")(emphasis in original). *Id.* at 9. The *Gibbs* court dismissed plaintiff's complaint without prejudice to plaintiff's opportunity to file an amended complaint to include allegations that would suggest the defendant selected the psychologists who administered the exam because of their bias against persons with ADHD or influenced their decisions due to the City's policy or practice of bias or discrimination against persons with ADHD. *Id.* at 13.

The *Gibbs* court repeatedly explains that it determined plaintiff's complaint failed to state a claim under the ADA and the RA because the court took judicial notice of Pennsylvania statutory requirements for City of Pittsburgh police officers. *Id.* at 2, 8, and 9. Specifically, under 37 Pa. Code § 203.11(a)(7), Pennsylvania law requires that police officer candidates pass a psychological exam

In this case, Defendant admits that there is no applicable law requiring its campus police officers to have normal color perception. (ECF 10). The duties set forth at 71 P.S. § 646.1 do not contain a reference to any vision requirement necessary to perform those duties. Though Defendant cites to 37 Pa. Code § 203.11(a)(7) as support for the validity of its job qualification that its officers have normal depth and color perception, this Court has not been advised of any statute mandating that campus police officers have normal color perception.

Plaintiff pleads that the only difference between his current position and the position of campus police officer is the arresting powers and that he is qualified to do the essential functions of the position of campus police officer. Defendant vigorously disputes these allegations. Any determination that Plaintiff has failed to state a valid claim because he is not "otherwise qualified" for the position would necessarily be premised on acceptance of the Defendant's proffered

8

explanations in support of the necessity of its job qualification standards. However, under Rule 12(b)(6), this Court may only examine the sufficiency of Plaintiff's pleadings in the Complaint. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal citation omitted). Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint is denied without prejudice for Defendant to raise these arguments at the summary judgment stage.

An appropriate order follows.

DATED: January 29, 2020

*Stephanie L. Haines*
Stephanie L. Haines
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANNY DAVID,<br><br>Plaintiff,<br><br>vs.<br><br>THE PENNSYLVANIA STATE UNIVERSITY,<br><br>Defendant. | Civil Action No. 3:19-cv-205<br>Judge Stephanie L. Haines |

## ORDER

AND NOW, on this 29th day of January, 2020, in accordance with the memorandum opinion, it is hereby ordered that Defendant's Motion to Dismiss for Failure to State a Claim (ECF 3) is DENIED without prejudice for Defendant to raise these arguments at the summary judgment stage.

Stephanie L. Haines
United States District Judge